**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

CASE NO.: _____

IN RE APPLICATION OF OFER LEVIN AND GTI
GLOBAL INVESTMENTS LTD. FOR JUDICIAL
ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

_____/

**APPLICATION OF OFER LEVIN AND GTI GLOBAL INVESTMENTS LTD.
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782
AND INCORPORATED MEMORANDUM OF LAW**

Applicants Ofer Levin ("Mr. Levin") and GTI Global Investments Ltd. ("GTI") (and, collectively, "Applicants") hereby apply to the Court *ex parte*[1] for an order of judicial assistance pursuant to 28 U.S.C. § 1782 to issue subpoenas or other appropriate process requiring Edmund Shamsi ("Shamsi"); Revivim, LLC, Lenachalah, LLC, Countryside Commons SWF, LLC, Hagefen, LLC, and Sigal Group Developments, LLC (collectively, the "Shamsi Entities"); and J.P. Morgan Chase Bank, N.A. ("J.P. Morgan Chase") (and Shamsi, the Shamsi Entities, and J.P. Morgan Chase, collectively, "Respondents"),[2] stating as follows:

> *"Facts sometimes have a strange and bizarre power that makes their inherent truth seem unbelievable"*
>
> **– Werner Herzog –**

Although this sounds like "the stuff of movies," Applicants, their Israeli counsel, and even an Israeli arbitrator, were victims of computer hacking attacks orchestrated and funded by Shamsi,

---

[1] *Ex parte* is the proper procedure for a 28 U.S.C. §1782 application. *See In re Clerici,* 481 F. 3d 1324, 1329–1330 (11th Cir. 2007) (*ex parte* order granted one day after application was filed); *see also In re Trinidad and Tobago*, 848 F. 2d 1151, 1152 (11th Cir. 1988) (affirming *ex parte* order under § 1782) (*overruled on other grounds*).

[2] Applicants reserve the right to supplement this Application to request additional subpoenas from individuals and/or entities that may be determined to have additional, relevant information for use in the Proceeding to Vacate Arbitration Award (defined *infra*).

Applicant's opponent in an arbitration proceeding and now the subject of multiple court proceedings in Israel. If this was not enough, there is evidence that Shamsi, indirectly, bribed witnesses and, with the help of mafiosos, threatened Mr. Levin and his family members of bodily injury. Applicants have recently moved, in the district court in Israel, to vacate the arbitration award that resulted after Shamsi's malfeasance. Shamsi is found in Florida, and the Shamsi Entities (which are believed to have funded the hackings), are found in Florida. J.P. Morgan Chase, where Shamsi banks, is also found in Florida. Thus, as more fully set forth below, Applicants seek entry of an order, pursuant to 28 U.S.C. § 1782, allowing them to serve subpoenas and other appropriate process on Respondents, and requiring them to provide documents and testimony within their possession, custody, or control regarding or relating to:

1.     The flow of funds from Shamsi to certain private Investigators (defined *infra*) who were involved with the "hack-for-hire" group known as BellTrox (defined *infra*), entities under their control and/or ownership ("Investigator Entities"), and/or BellTrox itself;

2.     Shamsi's communications with the Investigators, the Investigator Entities (listed *infra*), and/or BellTrox;

3.     Transaction information from Shamsi's bank accounts at J.P. Morgan Chase, believed to have been used to pay the Investigators and/or Investigator Entities so that they could, in turn, pay BellTrox;

4.     J.P. Morgan Chase's communications with Shamsi, or anyone acting on his behalf, regarding the transfer of funds to the Investigators and/or the Investigator Entities;

5.     Shamsi's communications relating to electronic hackings that occurred during an arbitration proceedings in Israel, including but not limited to instructions given by Shamsi to the Investigators; and

6.        Shamsi's FATCA filings during the years 2015 through 2018 and in 2024.

The requested relief is for the purpose of obtaining limited but crucial discovery for use in a civil proceeding in Israel wherein the Applicants have moved to vacate an arbitration award and appellate arbitration award issued from arbitration proceedings in Israel between the Applicants and Respondent Shamsi. The Court should grant this petition for the reasons set forth in the incorporated Memorandum of Law that follows.

<u>**MEMORANDUM OF LAW**</u>

## I.    INTRODUCTION

Applicants seek an order of judicial assistance pursuant to 28 U.S.C. § 1782. This Application is for issuance of subpoenas for testimony and documentary evidence within this District. The individuals and entities from whom testimony and evidence are sought, Shamsi, the Shamsi Entities, and J.P. Morgan Chase, are all found in this District.

Applicants seek evidence for use in a civil proceeding in Tel Aviv, Israel.[3] On January 26, 2025, Applicants filed a Motion to Vacate Arbitration Award (the "Motion to Vacate") in the District Court of Tel Aviv, Israel, initiating the action styled *Levin, et al. v. Shamsi, et al.*, Civil Action Number 67464-01-25 (the "Proceeding to Vacate the Arbitration Award"). In addition to the Applicants and Respondent Shamsi, the parties to the Proceeding to Vacate the Arbitration Award are companies controlled by Mr. Levin (the "Levin Named Entities"), Shamsi's relatives, and Back Bay Manor Associates Limited Partnership ("Back Bay Manor Associates"), a company owned by Shamsi. *See* Declaration of Shai Sharvit in Support of § 1782 Application, attached hereto as **Exhibit A** ("Sharvit Declaration"), ¶¶ 5-8.

---

[3] If the evidence adduced here supports it, Applicants may also seek to use the evidence gathered here to initiate other Section 1782 proceedings in other jurisdictions for the ultimate purpose of gathering additional evidence to be used in the Proceeding to Vacate Arbitration Award.

In Israel, Applicants are seeking declaratory relief vacating an arbitration award issued on September 26, 2023 (the "Arbitration Award") and an appellate arbitration award issued on November 16, 2024, and amended on December 1, 2024, and December 26, 2024 (the "Appellate Arbitration Award"). In support of the Motion to Vacate, Applicants seek to establish that Shamsi and/or individuals or entities acting on his behalf coordinated and funded a hack-for-hire operation to attack the Applicants, their attorneys, and even the Arbitrator during the arbitration proceedings in Israel. Shamsi denies his involvement with the hacking incidents that occurred during the arbitration proceedings but "curiously," neither Shamsi nor his attorneys suffered any hacking attempts, although Levin, his legal counsel in Israel and the Levin Named Entities, as well as the Arbitrator were all targets of cyber-attacks.

The evidence that Applicants seek will materially assist in establishing facts critical to Applicant's claims in the Proceeding to Vacate the Arbitration Award, which are based on the hacking incidents, bribing of witnesses, threats of bodily injury, and violations of Israeli public policy. If the Motion to Vacate is granted on one or more of these bases, the Arbitration Award and Appellate Arbitration Award will be vacated.

## II.   FACTUAL BACKGROUND

### A.  The Arbitration in Israel and Proceedings Relating to Same.

The dispute underlying the Proceeding to Vacate the Arbitration Award centers on investments made by Shamsi with Mr. Levin into GTI. *See* Sharvit Declaration, ¶ 10. In 2011, Shamsi and his relatives transferred $18.4 million USD as a financial investment in GTI, which was managed by Mr. Levin. *Id.* On information and belief, Shamsi's transfer to GTI was made from a U.S. bank account held at J.P. Morgan Chase. *Id.* at n. 1. In 2014, the United States enacted the Foreign Account Tax Compliance Act ("FATCA"), which required Shamsi, as a United States

citizen, to report and pay taxes on his investment in the United States and also required GTI to report accounts it managed on behalf of United States citizens.  *Id.*  Because Shamsi failed to report his investments in compliance with the FATCA – and also refused to allow GTI to report his investments – Applicants had to remove Shamsi's funds from GTI.  *Id.*  Subsequently, in 2015, the parties entered into joint venture agreements for the establishment of a joint venture to invest in real assets (the "Joint Venture Agreements").  *Id.*

Disputes eventually arose between Shamsi and Mr. Levin due to Shamsi's concerns about the implications of the Joint Venture Agreements under United States inheritance laws.  *Id.* at ¶ 11.  This dispute eventually resulted in Shamsi filing a complaint for fraud in the Southern District of Florida (Case No.: 9:17-cv-80372) on March 22, 2017.  *Id.*  In his complaint, Shamsi claimed that the funds that had been invested in GTI, and later transferred for investments in real assets, had in fact been given to Mr. Levin as a loan.  *Id.*

Shamsi's claim was compelled to arbitration in Israel pursuant to an arbitration agreement between the parties.  *Id.* at ¶ 12.  The arbitration was conducted before the Honorable Judge (ret.) Avi Zamir (the "Arbitrator") beginning in June 2018 through May 31, 2023.  *Id.* at ¶ 13.  In the arbitration proceedings, Shamsi, his relatives, and Back Bay Manor Associates (collectively, the "Shamsi Parties") alleged, *inter alia*, that the Joint Venture Agreements were sham agreements whereby the parties allegedly agreed that Shamsi and his relatives' funds would continue to be managed as part of GTI, in contravention of the law, while Shamsi was committing tax and reporting offenses.  *Id.* at ¶ 12.

On September 26, 2023, the Arbitrator issued the Arbitration Award, which accepted Shamsi and the Shamsi Parties' argument that the Joint Venture Agreements were sham agreements.  *Id.* at ¶ 13.  The Arbitrator rejected the remainder of Shamsi and the Shamsi Parties'

claims that the investments were in fact loans, and that a minimal return on the investments had been promised.  *Id.*  The Arbitrator required the Applicants to pay Shamsi and his relatives the amounts invested in GTI according to the value of the investments as of June 30, 2016, plus interest.  *Id.*

After appeals by both parties, the Appellate Arbitration Award was issued.  *Id.* at ¶ 14.  It denied the appeals in their entirety and concluded that, although the Joint Venture Agreements were illegal agreements (according to the findings of the Arbitrator), they would not be revoked because their principal objective was to enable the continued investment of funds into GTI.  *Id.* The Appellate Arbitration Award was subsequently amended on December 1, 2024, and again on December 26, 2024.  *Id.* at ¶ 15.

On January 1, 2025, Shamsi and the Shamsi Parties filed a Motion to Approve the Arbitration Award in the action styled *Shamsi, et al. v. Levin, et al.*, Civil Action Number 3216-01-25 (the "Proceeding to Confirm the Arbitration Award").  *Id.* at ¶ 16.

On January 26, 2025, Applicants and the Levin Entities filed the Motion to Vacate. Consistent with Israeli Procedure, the Motion to Vacate was filed as a response in the Proceeding to Confirm the Arbitration Award and also under a separate case number to initiate the Proceeding to Vacate the Arbitration Award.[4]  *Id.* at ¶ 17, 47.

---

[4] Simultaneously with the Motion to Vacate, the Applicants filed a motion for the case on the Motion to Vacate to be held "behind closed doors" (*i.e.,* confidential and not accessible to the public at large) to safeguard the privacy of the parties and third parties (most notably Levin's legal counsel and the Arbitrator), given the nature of the information that may have been exposed in the hacking incidents, and in light of the potential damage that may occur from public exposure of these hackings or attempted hackings.  *Id.* at ¶ 41.  The motion for the proceedings to be held "behind closed doors" explicitly exempts any other proceedings between the parties, including this Application.  *Id.*

**B.  The Hack-for-Hire Against Applicants, Their Attorneys, and the Arbitrator.**

The Motion to Vacate is premised on the wrongful conduct of Shamsi that fundamentally undermined the arbitration proceedings in Israel.  *Id.* at ¶ 18.  During the course of the arbitration proceedings, Applicants were victims of phishing email attacks that attempted to, among other things, hack into the Applicants' computer systems to locate and steal personal data.  *Id.*  Mr. Levin also identified an attempt to hack his credit data information at the Bank of Israel.  *Id.* at ¶ 19.  Applicants suspected that Shamsi and/or agents operating on his behalf were behind the attacks.  *Id.* at ¶ 18.  Shamsi and the Shamsi Parties denied their involvement.  *Id.*  Mr. Levin initially contacted an Austrian investigation agency, asking them to also involve the Federal Bureau of Investigations in the United States ("FBI"), and requested that the agencies investigate the actions of Shamsi and the Shamsi Parties and/or agents acting on their behalf.  *Id.* at ¶ 20.

On the basis of the phishing attacks, the Applicants had filed two motions for temporary injunction on August 8, 2019, and October 15, 2020, against Shamsi and the Shamsi Parties in the initial arbitration proceedings.  *Id.* at ¶¶ 22-23.  Shamsi and the Shamsi Parties opposed the motions for temporary injunction on jurisdictional grounds but, in their response, admitted that Shamsi hired private investigators to conduct an investigation into the Applicants.  *Id.*  The Arbitrator ultimately concluded that he did not have jurisdiction to issue the temporary injunction requested and, thus, dismissed both motions without hearing the claims on their merits.  *Id.* at ¶¶ 22-23.

Parallel with the hacking incidents during the arbitration proceedings, similar cyber-attacks were identified by the attorneys for the Applicants in Israel and abroad.  *Id.* at ¶ 21.  Even more shocking, Applicants recently discovered that not only were their computers hacked, but the computers of the Arbitrator, the Honorable Judge (ret.) Avi Zamir, were also targeted in a phishing attack, and apparently hacked, during the arbitration proceedings.  *Id.* at ¶ 33.  Thus, it has been

7

revealed that the computers of the Applicants, their legal counsel, and the Arbitrator were attacked and hacked during the arbitration proceedings but, curiously, the computers of Shamsi and the Shamsi Parties were not hacked.  *Id.*

### 1. Investigations Reveal the Involvement of BellTrox, Private Investigators, and Shamsi.

Applicants hired two firms, the Wizman-Yaar investigation company from Israel and Athena Intelligence SA from Switzerland, to conduct a comprehensive investigation to uncover the party or parties responsible for the hackings.  *Id.* at ¶ 24.[5]  The investigations concluded that there was an "extremely high degree of likelihood" that the cyber-attacks were conducted by a hack-for-hire group carrying out a focused cyber-attack in accordance with orders from a client. *Id.*  Specifically, on information and belief, the original "work order" for the operation against the Applicants used the code name "New project: Ofer."  *Id.*  Not surprisingly, Mr. Levin's first name is Ofer.

The investigations further concluded that a hack-for-hire group BellTrox, was behind the hacking incidents.  *Id.* at ¶ 25.  As for the person who coordinated the hackings, the evidence obtained during the investigation suggested that Shamsi was linked to the cyber-attacks.  *Id.* at ¶ 31.  Shamsi's involvement in the hackings was evidenced by, among other things, (i) the absence of evidence indicating attacks on Shamsi's own email addresses; (ii) Shamsi hiring private investigators in connection with the arbitration proceedings; and (iii) the substantial evidence

---

[5] Mr. Jonas Rey, the Founder and Partner of Athena intelligence SA and Cryptos Aegis, and Mr. Raphael Balulu, a cyber forensic researcher and computer forensic analyst at Wizman-Yaar, submitted expert reports and opinions confirming these findings and providing Applicants with information about BellTrox and the methods by which these hacking incidents were carried out. *See id.* at ¶ 25 and Exhibits 2 and 3.

linking Shamsi or someone acting on his behalf to the hacking of one of Mr. Levin's email accounts. *Id.*

BellTrox is an Indian hacker group of highly seasoned internet mercenaries whose employees have been accused (across the United States and elsewhere) of crimes derived from internet hackings into the United States, as well as international companies and businesses, in attempts to gain access to private data and/or to engage in acts of fraud. *Id.* at ¶ 25. The United States has been undertaking efforts to dismantle hacking operations linked to BellTrox. *Id.* at ¶ 26. BellTrox's founder, Sumit Gupta, is wanted by the FBI. *Id.* And several other private investigators, including three individuals with strong ties to Israel, Mr. Aviram Azari, Mr. Eitan Arusy, and Mr. Amit Forlit (the "Investigators"), were recently arrested, or arrest warrants have been issued against them, by U.S. authorities. *Id.* at ¶¶ 26-28. These Investigators were involved in hack-for-hire operations utilizing the services of BellTrox. *Id.* at ¶ 26. BellTrox was able to commercialize its large-scale hack for hire operations using private investigators like the Investigators. *Id.* at ¶¶ 26-28.

Further, the Investigators control or controlled companies – the Investigator Entities[6] – that may have been used to enable their hack-for-hire operations. *Id.* at ¶¶ 28-30. These entities were uncovered via court filings in the United States District Court for the Southern District of New York relating to other hack-for-hire operations involving the Investigators and the Investigator Entities (Case No.: 1:22-cv-08728). *Id.* Other known cyber-attacks carried out by the Investigators shared identical characteristics and methodology to the attack aimed at the Applicants. *Id.* at ¶ 30.[7]

---

[6] The Investigator Entities known at the time of filing this Application include: Gam Kan Lo Roffe Shinaim, LLC; Kan Lo Roffe Shinnaim, LLC; and Global Impact Services, LLC.
[7] Thus, this Application seeks discovery from the Respondents relating to the Investigators and Investigator Entities and any communications with Shamsi relating to the hack-for-hire carried out against Mr. Levin and the Levin Named Entities during the arbitration proceedings.

**C. The Hackings and Shamsi's Related Misconduct Prompt Applicants to Move to Vacate the Arbitration Award.**

Additionally, Shamsi's misconduct during the arbitration proceedings was not limited to orchestrating cyber-attacks on his opponents and the Arbitrator. *Id.* at ¶ 34. Shamsi tried to bribe one of his witnesses, Adv. Yossi Shefit, an individual who dealt with Shamsi's tax affairs and other issues common to Mr. Levin and Shamsi, to provide a false affidavit in the arbitration proceedings in exchange for $50,000 USD. *Id.* And an additional bribe was carried out relating to the testimony of Mr. Yoni Saltzman, a lawyer who served as *Mr. Levin's* consultant during the negotiations of the Joint Venture Agreements but testified for Shamsi and the Shamsi Parties, received $250,000 USD from Shamsi in exchange for his testimony. *Id.* Shamsi and the Shamsi Parties also threatened and harassed employees, witnesses, and potential witnesses. *Id.* at ¶ 35. There were explicit threats against Mr. Levin and his family members, including threats to involve the Ukrainian mafia to "investigate" Mr. Levin's family relating to the issues disputed in the arbitration proceedings. *Id.* Applicants filed additional motions for temporary injunctions in the arbitration proceedings based on these threats and bribes, but those too were dismissed on jurisdictional grounds without being heard on the merits. *Id.*

Thus, Applicants filed the Proceeding to Vacate the Arbitration Award in the Israeli District Court requesting the Arbitration Award and Appellate Arbitration Award be vacated. Applicants assert that, pursuant to Israeli Arbitration Law, (i) the Arbitration Award and Appellate Arbitration Award are contrary to public policy and (ii) the Arbitration Award and Appellate Arbitration Award were impacted by circumstances that offend the principles of natural justice and/or constituted an act of fraud that impacted the arbitration award and warrant a retrial. *Id.* at ¶¶ 36-41. If the Motion to Vacate is granted, the Arbitration Award and Appellate Arbitration Award will be vacated. *Id.* at ¶ 41.

**III.     ANALYSIS UNDER 28 U.S.C. §1782**

**A.  Applicable Standard.**

This Application is made pursuant to 28 U.S.C. § 1782 ("Section 1782"), which provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Section 1782's twin aims are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (internal quotation marks and citation omitted); *see also In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R. L*, Case No. 08-20378-MC, 2011 WL 181311, at *6 (S.D. Fla. Jan. 19, 2011). The goals of the statute are to provide "equitable and efficacious" discovery procedures in United States courts "for the benefit of tribunals and litigants involved in litigation with international aspects," and to "encourage[e] foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 11-4851-CV, 2012 WL 695541,

11

at *3 (2d Cir. 2012) (internal citations omitted).  "Section 1782 is the product of over 150 years of congressional effort to provide federal-court assistance in gathering evidence for use in foreign tribunals.  The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance."  *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (internal citations and quotations omitted).

### B.  The Application Meets All Four Statutory Requirements of Section 1782.

There are four statutory requirements that must be met before a court can grant a Section 1782 petition:

> (1) the request must be made "by a foreign or international tribunal," or "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Id.* at 1269.  This Application meets all four requirements.

#### 1.  Applicants are Interested Persons.

Applicants are parties to the Proceeding to Vacate the Arbitration Award.  Applicants are the movants (referred to in the Motion to Vacate as the "Applicants") who filed the Motion to Vacate requesting that the Israeli District Court vacate the Arbitration Award and Appellate Arbitration Award.  *See* Sharvit Decl., ¶¶ 9, 17.  The Supreme Court in *Intel* unequivocally held that parties to a foreign proceeding qualify as interested persons under the statutory requirements. *Intel*, 542 U.S. at 256–57.  Indeed, the *Intel* court noted that a foreign litigant may be the most common example of the "interested persons" who may invoke Section 1782.  *Id.* at 256.  The Eleventh Circuit and this Court have recognized the same principle.  *See Application of Consorcio*,

747 F.3d at 1269 ("As a party to the dispute, CONECEL plainly is an 'interested person'"); *In re Alianza Fiduciaria S.A.*, No. 13-81002-MC, 2013 WL 6225179, at *3 (S.D. Fla. Oct. 24, 2013) ("[N]o doubt litigants are included among, and may be the most common example of, the 'interested person[s].'"). Thus, Applicants meet the "interested person" requirement of Section 1782.

**2. The Application Seeks Documentary and Testimonial Evidence.**

Applicants seek documentary and testimonial evidence from Shamsi, the Shamsi Entities, and J.P. Morgan Chase relating to, *inter alia*, the hacking incidents that occurred during the arbitration proceedings in Israel. Documentary evidence is expressly contemplated by Section 1782. *See In re Clerici,* 481 F. 3d at 1331–1332. Testimonial evidence is also contemplated. *See Matter of Colombo Agroindustria S.A.*, No. 22-21670-MC, 2022 WL 2167719, at *2 (S.D. Fla. June 16, 2022) (finding the second statutory requirement was met because applicant's request sought both testimonial and documentary evidence). Therefore, Applicants meet the second requirement of Section 1782.

**3. The Application Seeks Discovery for Use in the Proceeding to Vacate the Arbitration Award.**

There is no doubt that the documents and testimony that Applicants seek are for use in the Proceeding to Vacate the Arbitration Award.[8] The "'for use in' does not have a foreign discoverability nor a foreign admissibility requirement." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006); *see also In re Gonzalez*, No. 20-24628-MC, 2021 WL 3835180, at *4 (S.D. Fla. Apr. 14, 2021) ("Section 1782 does not impose a foreign discoverability requirement.").

---

[8] And, to the extent necessary, to oppose the Proceeding to Confirm the Arbitration Award.

Instead, this requirement "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1029.[9]

The documents and testimony that Applicants seek are highly relevant to the Proceeding to Vacate the Arbitration Award. *See* Sharvit Decl., ¶¶ 49-52. The information sought relating to the hacking incidents that occurred during the arbitration proceedings will significantly assist the Israeli District Court in its decision to vacate the Arbitration Award and Appellate Arbitration Award. *See id.* at ¶¶ 48-52. Specifically, Applicants' Motion to Vacate is based on the hacking incidents, bribery of witnesses, and threats of bodily injury that tainted the arbitration proceedings. *Id.* at ¶ 39. The evidence requested relating to Shamsi's involvement with the hack-for hire operation – e.g., wire transfer information from his accounts at J.P. Morgan Chase and communications relating to payments to the Investigators, Investigator Entities, and/or BellTrox – will be instrumental in confirming Applicants' suspicions that Shamsi coordinated and funded the hackings. *See id.* at ¶¶ 49-52. This information will assist Applicants in defending against Shamsi's claim that he was not involved in the hack-for-hire operation and his arguments in favor

---

[9] The Northern District of Illinois further explained:

> To be perfectly clear, the Court specifically excludes from the standard the sentence in Rule 26(b)(1) that reads: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1). To require an applicant to show that discovery is reasonably calculated to lead to evidence admissible in the foreign proceeding would be tantamount to a foreign-admissibility rule. The reasons above that counsel against a foreign-admissibility rule are equally applicable to a "foreign-admissibility-lite" rule.

*Id.* at 1029.

of approving the Arbitration Award and Appellate Arbitration Award. *Id.* at ¶¶ 47-52. This evidence will, thus, be necessary to the resolution of the Proceeding to Vacate the Arbitration Award. *See id.* at ¶ 52.

### 4. Respondents are Found in This District.

The Respondents, Shamsi, the Shamsi Entities, and J.P. Morgan Chase, are all found in this District. Shamsi is found in the Southern District of Florida for purposes of Section 1782 because he resides or can be found at 4605 S. Ocean Blvd., Apt. 6D, Boca Raton, Florida 33487 (an address for residential real property which Shamsi has owned since 2020).[10] *See In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *6 (S.D. Fla. July 3, 2018), *on reconsideration in part*, No. 18-20226-CIV, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018) (discovery targets were "found" in the Southern District of Florida in part because they owned residential real property and paid Florida real estate taxes). Shamsi may also be found at 7745 Wood Duck Drive, Boca Raton, Florida 33434, which is an address listed on the Florida Department of State, Division of Corporations' webpages for the Shamsi Entities. *See* Sharvit Decl., ¶ 32.

J.P. Morgan Chase is found in this District because it maintains a branch and conducts business in Miami. *See Application of Consorcio*, 747 F.3d at 1269 (company that had an office and conducted business in Miami was "found" in the Southern District of Florida). A bank may be properly served anywhere it operates a branch. *See S. Bank Nat'l Ass'n v. Sararo*, 2017 WL 1838634, at *1 (M.D. Fla. May 8, 2017) (noting that under Section 655.0201, Florida Statutes, a financial institution may place a registered agent in the state designated to accept service of process or service may be made at any branch, office, or place of business in the state). Because J.P.

---

[10] *See* PALM BEACH COUNTY PROPERTY APPRAISER, https://pbcpao.gov/Property/Details?parcelId=24434709040000064 (last visited March 10, 2025).

Morgan Chase operates one of its South Florida branches at 411 S. County Rd., Palm Beach, Florida 33480, J.P. Morgan Chase is found in the Southern District of Florida.

The Shamsi Entities are all found in this district. For purposes of Section 1782, a corporation or other entity is found in the district where it has an office. *See In re Att'y Gen. of Quebec for Jud. Assistance Pursuant to 28 U.S.C. § 1782*, No. 21-MC-23671, 2021 WL 5231630, at *1 (S.D. Fla. Nov. 10, 2021) (company based in Miami was found in the Southern District of Florida) (citing *Application of Consorcio*, 747 F.3d at 1269 (11th Cir. 2014)); *In re Illumina Cambridge Ltd.*, No. 19MC80215WHOTSH, 2019 WL 5811467, at *3 (N.D. Cal. Nov. 7, 2019) (corporation holding itself out as having a facility in San Jose, California was "found" in district). Maintaining a registered agent within a district is also sufficient to be "found" under Section 1782. *See In re Kurbatova*, No. 18-MC-81554, 2019 WL 2180704, at *2 (S.D. Fla. May 20, 2019) (entity that maintained a registered agent located in the district was "found" in the district under Section 1782).

Each of the Shamsi Entities is a Florida limited liability company with its principal place of business in the Southern District of Florida. Revivim, LLC maintains its principal place of business at 20295 NE 29th Place, Suite 201, Aventura, Florida 33180. Lenachalah, LLC maintains its principal place of business at the same address, 20295 NE 29th Place, Suite 201, Aventura, Florida 33180. Countryside Commons SWF, LLC has its principal place of business at 9045 La Fontana Blvd., Suite 105, Boca Raton, Florida 33434. Hagefen, LLC has its principal place of business at the same address, 9045 La Fontana Blvd., Suite 105, Boca Raton, Florida 33434. And Sigal Group Developments, LLC maintains its principal place of business at 50 SE Olive Way, Boca Raton, Florida 33432. Thus, there is no doubt that each of the Shamsi Entities are found in this District. *See In re Aso*, No. 19MC190JGKJLC, 2019 WL 3244151, at *5 (S.D.N.Y. July 19,

16

2019) (granting Section 1782 application because the entities headquartered in the Southern District of New York were "found" in the District under Section 1782).

Accordingly, Applicants meet all four statutory requirements for granting the Application under Section 1782.

### C.  The Discretionary Factors Weigh in Favor of Granting the Application.

The Supreme Court in *Intel* noted that, once an Applicant satisfies Section 1782's *prima facie* requirements, the following factors should be considered in exercising the discretion granted under Section 1782(a):

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant:" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is otherwise "unduly intrusive or burdensome." The Supreme Court in *Intel* added that "unduly intrusive or burdensome requests may be rejected or trimmed."

*Application of Consorcio*, 747 F.3d at 1269.  Granting this Application would be an appropriate exercise of the Court's discretion in aid of the Proceeding to Vacate the Arbitration Award.  A favorable exercise of discretion is warranted where, as here, the persons from whom discovery is sought "may be outside of the foreign tribunal's jurisdictional reach" and "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *See Intel*, 542 U.S. at 264.  All the discretionary factors weigh in favor of granting this Application.

**1. Neither J.P. Morgan Chase Nor the Shamsi Entities are Participants in the Proceeding to Vacate the Arbitration Award, and Although Shamsi *Is* a Participant, This Factor Weighs in Favor of Granting the Application.**

J.P. Morgan Chase and the Shamsi Entities are not parties to the Proceeding to Vacate the Arbitration Award and are, therefore, not "participants." The documents and information sought from J.P. Morgan Chase and the Shamsi Entities are beyond the reach of Israeli courts because these Respondents are not parties to the Proceeding to Vacate the Arbitration Award. Other than through the issuance of letters rogatory to a United States court, or through the use of some other applicable international convention, there is no method by which J.P. Morgan Chase or the Shamsi Entities could be compelled to produce documents or provide testimony in the Proceeding to Vacate the Arbitration Award. Sharvit Decl., ¶¶ 53-54.

That Shamsi is a party to the Proceeding to Vacate the Arbitration Award does not sway this discretionary factor against the Applicants. ***First***, with respect to Shamsi and information relating to entities under his control or management, including but not limited to the Shamsi Entities, the Israeli District Court has the *discretion* to exercise (or not) its authority to compel Shamsi to produce the same evidence in Israel. Sharvit Decl., ¶ 55. ***Second***, a Section 1782 applicant is not precluded from seeking discovery from a participant in the foreign proceeding. *See In re Clerici,* 481 F.3d at 1335 (granting Section 1782 application even though the discovery target was a party to the foreign proceeding); *Gyptec, S.A. v. Hakim-Daccach*, No. 16-20810-CIV, 2017 WL 6557425, at *7 (S.D. Fla. Sept. 27, 2017), *aff'd sub nom. In re Gyptec S.A. for an Ord. to Take Discovery Under 28 U.S.C. § 1782,* No. 16-CV-20810, 2017 WL 6559792 (S.D. Fla. Oct. 19, 2017) (finding applicant was not precluded from seeking discovery pursuant to Section 1782 merely because the target was a party to the ongoing litigation).

The discovery requested from Shamsi pursuant to Section 1782 is necessary because the Applicants seek documents and information relating to transactions from Shamsi's United States bank accounts and his entities operating in the United States, including but not limited to the Shamsi Entities. Sharvit Decl., ¶¶ 49-52. There is also no guarantee that Shamsi will be compelled by the Israeli District Court to produce this information in Israel. *Id*. at ¶¶ 53-55; *see also In re Ferrer*, 2018 WL 3240010, at *8 (permitting applicants to seek discovery from participants to the foreign proceedings located outside of Colombia). And, further, Applicants are not required to "exhaust" discovery procedures against Shamsi in Israel prior to requesting judicial assistance under Section 1782. *See Gyptec*, 2017 WL 6557425, at *7 (noting that requiring the applicant to seek the discovery in Colombia would result in an exhaustion requirement that is not present in Section 1782). Notably, the court in *Gyptec* found the Applicant was entitled to seek discovery under Section 1782 irrespective of whether the discovery target would, or could, submit to foreign discovery requests. *Id.* Therefore, the first discretionary factor weighs in favor of granting the Application.

### 2. The Relevant Tribunals, Laws, and Rules are not Hostile to This Application.

The second discretionary factor is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The Proceeding to Vacate the Arbitration Award is, without a doubt, an appropriate subject of judicial assistance.

*First,* the nature of the foreign tribunal is a district court in Tel Aviv, Israel. Sharvit Decl., ¶ 42. Applicants have moved to vacate the Arbitration Award and Appellate Arbitration Award by initiating the Proceeding to Vacate the Arbitration Award, requesting that the district court vacate the Arbitration Award and Appellate Arbitration award based on the implications of the

19

hacking incidents and principles of public policy. *Id.* at ¶¶ 36-41. Documents and testimony relating to the involvement of Shamsi, and/or individuals or entities acting on his behalf, in the hack-for-hire operation that targeted the Applicants, their attorneys, and the Arbitrator will be instrumental in the district court's decision to vacate the Arbitration Award and Appellate Arbitration Award. *See id.* at ¶¶ 47-52.

*Second*, the character of the proceedings is a civil adjudicative process. As previously stated, the Applicants seek declaratory relief vacating the Arbitration Award and Appellate Arbitration Award. *Id.* at ¶¶ 43-44. Based on Applicants' arguments in the Motion to Vacate, the district court will have to determine whether the hacking incidents, bribes, threats, and public policy violations support vacating the Arbitration Award and Appellate Arbitration Award. *Id.* at ¶¶ 36-39, 41. If the Motion to Vacate is granted, the Arbitration Award and Appellate Arbitration Award will be vacated. *Id.* at ¶ 41.

*Third*, the District Court of Tel Aviv would be receptive to evidence gathered through the Section 1782 Application. Israeli law does not contain any prohibition on gathering extraterritorial evidence. *Id.* at ¶¶ 56-57. There is no restriction applicable to Israeli courts on accepting or relying upon evidence gathered in the United States through 28 U.S.C. § 1782. *Id.* at ¶ 57. And the evidence accepted may be in the form of written affidavits or sworn testimony, as well as documentary evidence. *Id.* at ¶¶ 56-60. Thus, all evidence, including documents and testimony, constitutes evidence that can be used in connection with the Motion to Vacate. *Id.* Therefore, the second discretionary factor weighs in favor of granting the Application.

### 3. The Application Does Not Circumvent Proof-Gathering Restrictions.

The third discretionary factor is whether the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

20

States." *Intel*, 542 U.S. at 265.  The Application does not violate, or attempt to circumvent, any Israeli court restriction.  *Id.* at ¶¶ 57-60.  Israeli law does not contain any prohibition on the gathering of evidence outside of Israel, and Israeli courts are not precluded from accepting evidence gathered in other countries pursuant to Section 1782.  *Id.* at ¶ 57.  Nor does the Application conceal an attempt to circumvent foreign proof-gathering restrictions of the United States.  Accordingly, the evidence gathered through 28 U.S.C. § 1782 will not violate Israeli law. *Id.* at ¶¶ 56-60.

Relatedly, Applicants are not required to request this discovery from the Israeli District Court before filing this petition.  *See In re Labor Court of Brazil,* 466 F. Supp. 2d at 1031 ("The statute does not require parties to first seek the discovery in the foreign tribunal").  And Applicants cannot pursue discovery requests in Israel against J.P. Morgan Chase and the Shamsi Entities because they are not parties to the Proceeding to Vacate the Arbitration Award.  *See* Sharvit Decl., ¶ 53.

Lastly, the district court in Tel Aviv – or other Israeli court – will be receptive to the materials discovered under Section 1782.  There is no restriction applicable to Israeli courts on accepting or relying upon evidence gathered in the United States through 28 U.S.C. § 1782. Sharvit Decl., ¶¶ 57-60.  The evidence will undoubtedly assist Applicants in establishing that Shamsi was behind the hack-for-hire operation that targeted the Applicants, and the evidence will be accepted and received by the Israeli District Court.  *Id.* at ¶¶ 49-52, 56-57.  Therefore, the third factor weighs in favor of granting the Application.  *See In re Murchinson Ltd.*, No. 2:23-MC-00191-SB-PD, 2024 WL 489175, at *3 (C.D. Cal. Jan. 26, 2024), *report and recommendation adopted,* No. 2:23-MC-00191-SB-PD, 2024 WL 756297 (C.D. Cal. Feb. 21, 2024) (finding there was nothing to suggest that the Israeli court would be unreceptive to the discovery and, thus, the

application was not an attempt to circumvent foreign proof-gathering restrictions or policies in Israel).

### 4.   The Proposed Discovery is Neither Burdensome Nor Intrusive.

Finally, the Court may consider whether Applicants' discovery requests are unduly burdensome or intrusive. *Intel*, 542 U.S. at 265. They are not. Courts are directed to look at the requests in the aggregate, under the prism of Rule 26, Federal Rules of Civil Procedure. *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1033. Here, the requests are narrow and limited, seeking documents and information relating to:

1.      Evidence regarding the flow of funds from Shamsi to the Investigators, Investigator Entities, and/or BellTrox;

2.      Shamsi's communications with the Investigators, the Investigator Entities, and/or BellTrox;

3.      Transaction information from Shamsi's bank accounts at J.P. Morgan Chase, which are believed to have been used to make payments to the Investigators, Investigator Entities, and/or BellTrox relating to the hackings during the arbitration proceedings;

4.      J.P. Morgan Chase's communications with Shamsi, or anyone acting on his behalf, regarding the transfer of funds to the Investigators and/or the Investigator Entities;

5.      Shamsi's communications relating to electronic hackings that occurred during the arbitration proceedings in Israel, including but not limited to instructions given by Shamsi to investigators; and

6.      Shamsi's FATCA filings during the years 2015 through 2018 and in 2024.

And the requests are well within the scope of Rule 45 of the Federal Rules of Civil Procedure, which requires subpoenaed parties to produce documents within their "possession,

22

custody, or control." *Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391, at *3 (11th Cir. Feb. 7, 2023) (citing Fed. R. Civ. P. 45). "Control" is broadly construed for the purposes of discovery, including discovery under Section 1782, as "the legal right to obtain the documents requested upon demand." *Id.* (citation omitted) (Section 1782 applicant satisfied the fourth *Intel* factor because the proposed subpoenas requested documents within the discovery target's "control" as construed under Rule 45). The proposed subpoenas to the Respondents are not burdensome or intrusive under the parameters of Rule 45 and, thus, the fourth factor weighs in favor of granting the Application.

### D.   Other Related Proceedings.

The related proceedings currently pending between the parties in Israel – or anywhere else for that matter – are as follows:

a.      The Proceeding to Confirm Arbitration Award (discussed *supra*);

b.      Attachment Proceedings initiated by Shamsi on October 15, 2023, pending in the District Court of Tel Aviv, Israel, in the action styled *Shamsi, et al. v. Levin, et al.*, Civil Action Number 21211-10-23; and

c.      A civil claim initiated by Mr. Levin in January 2023, currently pending in the arbitration proceeding titled *Levin, et al. v. Shamsi, et al.*, Arbitration Case No. 981-109. Sharvit Decl., ¶ 61.

At this time, however, the only proceeding in which the Applicants anticipate using the evidence obtained pursuant to this Application is the Proceeding to Vacate the Arbitration Award and, if necessary, to defend against the Proceeding to Confirm the Arbitration Award. If needed in the future, Applicants may seek to use the evidence in other related proceedings in Israel, or to commence Section 1782 proceedings elsewhere.

## IV.    CONCLUSION

This Application satisfies the statutory requirements and meets the discretionary factors to obtain assistance under 28 U.S.C. § 1782.  Therefore, Applicants respectfully request that this Court grant the instant Application and enter an Order (proposed form attached as **Exhibit B**) allowing Applicants' attorneys to issue the subpoenas attached as **Composite Exhibit C**.

Respectfully submitted,

By:/s/ *Jorge D. Guttman*
Jorge D. Guttman, Esq.
Florida Bar No. 015319
jguttman@gunster.com
Alyssa F. Chamberlin, Esq.
Florida Bar No. 1049190
achamberlin@gunster.com
**GUNSTER, YOAKLEY & STEWART, P.A.**
600 Brickell Ave., Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
*Attorneys for Applicants*